UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL ALTHEISER,

                              Petitioner,

          v.                                                    9:21-CV-1083
                                                                (BKS)
JEFFREY TEDFORD, Superintendent, Adirondack
Correctional Facility,

                              Respondent.

_____

APPEARANCES:                                     OF COUNSEL:

MICHAEL ALTHEISER
Petitioner, pro se
780 State Street
Apt. # 11
Schenectady, NY 12307

HON. LETITIA JAMES                               ROBERT C. McIVER, ESQ.
Attorney for Respondent                          Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

BRENDA K. SANNES
United States District Judge

## DECISION and ORDER

### I.    INTRODUCTION

Petitioner Michael Altheiser seeks federal habeas corpus relief pursuant to 28 U.S.C.

§ 2254.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Memorandum of Law; Dkt. No. 1-2,

Affidavit.[1]  Respondent opposed the petition.  Dkt. No. 15, Answer; Dkt. No. 15-1,

---

[1] For the sake of clarity, citations to parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.  The only exception is the State Court Record, Dkt. No. 15-2–15-4, which is separately paginated; therefore, all citations will refer to the Bates Stamp in the lower left-hand corner of each page.

Memorandum of Law; Dkt. Nos 15-2–15-4, State Court Record ("SR").  Petitioner was given the opportunity to file a reply; however, he did not.  Dkt. No. 16, Text Order (setting date for Traverse).  For the following reasons, the petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

### A.    Initial Criminal Proceedings

On May 16, 2008, a fourteen count indictment charged petitioner with multiple counts of arson and reckless endangerment.  SR at 142-50.  On May 21, 2008, petitioner appeared, with counsel, at his arraignment where he entered a plea of not guilty to all counts.  SR at 151-59.

### B.    *Huntley/Mapp* Hearing[2]

On September 17, 2008, the Schenectady County Court conducted a *Huntley/Mapp* hearing to determine whether statements petitioner made to law enforcement were voluntary; whether there was anything illegal or improper about law enforcement's actions of entering petitioner's property; and whether any items of potential evidence should be suppressed.  SR at 1-4.

Rotterdam Detective Christopher Foster testified that, on March 25, 2008, he was dispatched to investigate multiple fires that occurred in occupied dwellings.[3]  SR at 7-8.  At the first home, Foster noted a petroleum product, which splashed on the front door, was used

---

[2]  A pretrial hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965), is held to determine the voluntariness of inculpatory statements made by a criminal defendant to law enforcement officers.  *See Huntley*, 15 N.Y.2d at 77–78.  A *Mapp* hearing is a hearing to determine whether suppression of evidence obtained pursuant to a search or seizure by police officers is constitutionally warranted.  *See Mapp v. Ohio*, 367 U.S. 643 (1961).

[3]  Foster testified that the date was March 25, 2007; however, given the charging documents and the rest of the testimony it appears that he misspoke and, instead, intended on talking about the day the crimes were committed on March 25, 2008.

as an accelerant, and he discovered a single match.  SR at 10.  Foster then approached the second dwelling, approximately 75 yards away, and noted the same petroleum smell, significantly more fire damage, and an observation of an area where something had been splashed on the siding.  SR at 10-12.  Foster asked other responding officers to canvas the neighborhood for more information on the fires, and the police retrieved a can of Milwaukee's Best, which emitted a strong odor of petroleum products, after the occupant of a third house reported finding and disposing of the empty beer can beside his porch.  SR at 13-17.

Rotterdam Investigator Donald DeMarco was working with Foster on March 25, 2008, and testified that he suggested they go speak with petitioner.  SR at 82.  Specifically, DeMarco knew petitioner in connection with an investigation he conducted a year earlier where a fire was set in the basement of petitioner's home.  SR at 82.  Petitioner indicated, as corroborated later by his neighbor, that he was intoxicated the night of the fire and he wanted to burn down his house to collect the insurance money.  SR at 88-89.  DeMarco also recalled that petitioner drank Milwaukee's Best, or a similar caliber of beer.  ST at 90-91.  Given petitioner's home was in close proximity to where the three arsons occurred in March 2007, DeMarco concluded a conversation with petitioner should occur.  SR at 90-91.

Foster and DeMarco pulled into petitioner's shared driveway, parked in the area at the end of the driveway, and then walked up to the rear of petitioner's home, where a covered back porch led into the interior of the home.  SR at 24-26, 31-33, 41.  There was no fence surrounding petitioner's yard or signs that indicated no trespassing.  SR at 24-25, 34.  This was the same entrance that DeMarco had previously used, at the petitioner's direction, when he investigated the fire in petitioner's basement.  SR at 85-87.

The back porch's door was ajar, and Foster testified that he and DeMarco entered the

porch to knock on petitioner's door.  SR at 31-34.  While standing on the back porch, Foster

noticed a strong smell of a petroleum-based product, similar to at the scene of the fires.  SR

at 35-36.  Foster then observed, almost at his feet, "a can upright opened of Milwaukee's

Best Ice Beer just sitting on the floor," which was identical to the one retrieved from the third

homeowner's garbage and whose contents "smelled like a petroleum-based product that

[Foster] described earlier."  SR at 35-38.  Foster knocked at the door, there was no answer,

and Foster and DeMarco left and returned to the station whereupon Foster applied for a

search warrant.  SR at 37-38.  After receiving the warrant, Foster returned to petitioner's

house and petitioner accompanied him to the police station for questioning.  SR at 41.[4]

The court concluded that there was no improper or unlawful police conduct.  SR at

130.  Specifically, the court held that "there was no search of the property of [petitioner] . . .

nor were any items seized prior to the obtaining of a search warrant."  SR at 131.  The police

did not unreasonably intrude on petitioner's property or inappropriately enter petitioner's

property – which was not fenced or otherwise posted – "through the rear porch [which] lead[]

to an interior door leading to the residence of the [petitioner], and which Detective DeMarco

had previously entered at least twice in the past."  SR at 132.  Further, petitioner "did not

have any reasonable expectation of privacy in the rear porch, as . . . the rear outer porch

door was opened, and it was a normal way of entering the premises and the police had every

right to go to the premises . . . and to question the [petitioner] about three arsons that had

occurred within a few yards of his property."  SR at 132-33.  In sum, the court found that the

police did not unlawfully trespass on petitioner's property and that the motion to suppress be

---

[4] No statement was read into the record during the hearing; however, there was a video recording of the
conversation between Foster and petitioner that was played for the court.  SR 45-47.

denied as law enforcement "legally entered upon the property of the [petitioner] . . . and legally proceeding through an open door to the rear enclosed porch."  SR at 133-34.

### C.     Plea and Sentencing

On November 12, 2008, petitioner appeared, with counsel, in Schenectady County Court for a plea hearing.  SR at 168-185.  Petitioner was advised that he had the right to proceed to a jury trial, where he could face up to a 25-year maximum on each of the second degree arson charges, or petitioner could accept the plea deal and be sentenced to 16 years' incarceration for each count, to be served concurrently, and 5 years' post-release supervision or parole.  SR 169.

Petitioner was placed under oath and testified that he completed ninth grade and had experience with the criminal justice system before when he was prosecuted for felony driving while intoxicated ("DWI") and attempted burglary.  SR at 171-72.  Petitioner acknowledged that his criminal history gave the court a basis to sentence him as a second felony offender.  SR at 172.

Petitioner reported that he took medication for schizophrenia and sleeping; however, it did not affect his ability to understand the pending court proceedings.  SR at 172.  If anything, it helped him better comprehend what was happening because it helped make his mind clearer.  SR at 182.  Petitioner stated that he was not on medication the day of the crime, instead, he was intoxicated.  SR at 172-73.  Petitioner acknowledged that "by pleading guilty [he was] giving up any possible defense about intoxication[.]" SR at 173.

The court went through all of the rights that petitioner would be giving up by pleading guilty: his right to a jury; his right to present a defense, specifically that he was too intoxicated to realize what he was doing; his right to cross examine witnesses; and his right to appeal.

5

Sr at 173-76, 183.  On multiple occasions petitioner indicated that he was entering into this plea knowingly and voluntarily and that no one had threatened him, coerced him, or promised him anything in return.  SR at 173-76, 181-83.

The court specifically asked petitioner about the events on March 25, 2008.  SR at 176-81.  Petitioner indicated that he had no animosity towards the homeowners of the houses he damaged; however, he was drunk and angry and threw gasoline about, which he then ignited, to cause the fires.  SR at 176-81.  Petitioner acknowledged that he could have hurt or killed the people in the houses or any first responders, although petitioner indicated that no firefighters responded that night so there was no actual risk to their health and safety.  SR at 180-81.  The court accepted petitioner's guilty plea and reiterated the sentence of 16 years' incarceration and 5 years' post-supervised release, and petitioner signed the waiver of appeal form.  SR at 181, 186.

On February 10, 2009, petitioner appeared, with his counsel, to a sentencing hearing.  SR at 187-192.  The court explained that, during the course of the presentence investigation report, petitioner had told probation something different than what he testified to during his plea hearing.  SR at 189-90.  Specifically, petitioner said that he did not remember starting any of the fires but "to accept the deal [petitioner had] to say [he] remembered [what happened.]" SR at 190.  Petitioner's counsel stated that there "was a considerable amount of forensic evidence in th[e] case . . . all of which was discussed with [petitioner.]" SR at 190.  The matter was adjourned for petitioner to receive further counsel and clarify his intentions.  SR at 190-92.

On February 27, 2009, petitioner and his counsel returned for the second sentencing hearing.  SR 194-206.  Petitioner indicated that he had a chance to review the evidence with

his attorney and "with the evidence pointing toward [petitioner] and [him] . . . hav[ing] memories of doing it," petitioner wanted to move forward with the plea.  SR at 196.  Petitioner admitted to being the individual who was convicted of felony DWI in 2005, cementing his status as a second felony offender.  SR at 196.  The court pronounced the sentence of 16 years' incarceration and 5 years' post-release supervision, and petitioner again acknowledged the waiver of his right to appeal and his voluntariness entering said plea.  SR at 203; *see also* SR 207-08 (sentence and commitment orders).

### D.    Direct Appeal

A counseled appellate brief was filed on petitioner's behalf, by Marcel J. LaJoy, Esq., requesting that counsel be relieved because there were no non-frivolous issues that could be raised on appeal.[5]  SR at 220-24.  Specifically, appellate counsel concluded that the record reflected that the guilty plea and waiver were voluntary, knowing, and intelligent; petitioner was sentenced as promised and consistent with New York State Law; the appeal waiver foreclosed any potential records-based arguments; and petitioner received effective assistance of trial counsel.  SR at 221-24.  The People "concur[red with petitioner's] counsel's analysis finding no appealable issues and, therefore, request[ed] that the Appellate Division enter an Order reflecting the conclusion of counsel."  SR at 230.

Petitioner filed a pro se submission arguing that he was entitled to relief because (1) Foster and DeMarco illegally searched petitioner's back porch and seized the beer can which should have been suppressed; (2) the judge presiding over the *Huntley/Mapp* hearing was biased; (3) the plea was unlawful; and (4) the court erred in allowing the People to retrieve a

---

[5]  The brief was filed pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967).

buccal swab for DNA evidence comparison so late in the proceedings.  SR at 226-227.

On February 4, 2010, the New York State Appellate Division, Third Department, agreed with petitioner's counsel.  SR at 231-32; *see also People v. Altheiser*, 70 A.D.3d 1067, 1067 (3rd Dep't 2010).[6]  The Third Department concluded that "[b]ased upon [its] review of the record and counsel's brief, as well as [petitioner's] pro se [filing] . . . the judgment [be] affirmed and counsel's application to withdraw [be] granted."  SR at 232.

Respondent "is not in possession of proof of service of notice of entry of th[e Third Department] decision and order upon petitioner."  Dkt. No. 15 at 3.  Petitioner also did not file an application for leave to appeal to the New York State Court of Appeals.  Pet. at 5.

### E.     440 motion

On June 19, 2018, over eight years later, petitioner filed a pro se motion seeking to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10 ("440 motion").  SR at 234-39.  Petitioner argued that he was entitled to relief because (1) he was subjected to an illegal search and seizure when the detectives trespassed onto and illegally entered petitioner's home without a search warrant; and (2) the guilty plea was unlawful since petitioner "never admitted any involvement in this crime" and he "kept [his] inocents [*sic*] all the way through [his] case."  SR at 239.  The State opposed the motion.  SR at 240-42.

On April 30, 2019, the Schenectady County Supreme Court denied the motion.  SR at 251-53.  Specifically, the court held that petitioner

> raised issues that appeared in the record and could have been raised on his direct appeal.  An appellate attorney reviewed the record, did not find any viable claim, including a Fourth Amendment

---

[6] A copy of the Third Department's decision, retrieved from the legal research database Westlaw, is included in the State Court Record.  SR at 397.

> violation and filed a brief to that effect.  More importantly, the Appellate Division reviewed that record of the pre-trial hearing and the Schenectady County Court's decision on that hearing, counsel's brief and the [petitioner's] pro se letter and agreed with appellate counsel that there were no nonfrivolous issues to be raised on appeal . . . As such, the Appellate Division affirmed the judgment and granted counsel's application to withdraw from representation. . . . [The petitioner] now argues the very same issue[s] that were already raised in his appeal that was decided by the Appellate Division. . . . Consequently this [c]ourt denied the [petitioner's] motion pursuant to CPL [section] 440[.]

SR at 253.

Petitioner sought leave to appeal.  SR at 258-260.  However, the Third Department denied the application on April 21, 2020.  SR at 316.  Petitioner again sought leave to appeal and, on July 28, 2020, the New York Court of Appeals dismissed petitioner's application "because the order sought to be appealed from is not appealable under [the] C[riminal Procedure Law.]" SR at 330.

### F.    Writ of Error Coram Nobis[7]

While petitioner's application to appeal the denial of his 440 motion was pending, petitioner also filed a writ of error coram nobis in the Third Department on October 19, 2019. SR at 379-396; *see also* SR at 410-16 (memorandum of law in support of application for the writ).  Petitioner argued that his appellate counsel was ineffective for failing to litigate his suppression issue and his waiver of his right to appeal was invalid.  SR 379-96.  The State opposed the application.  SR at 417-423.  Petitioner filed a reply.  SR at 424-28.  On

---

[7]  Petitioner also used the same documents that he filed in support of his writ of error coram nobis to also make 440 motions: in Orange County on or about November 25, 2019 (SR at 343-354); in Essex County (SR at 355-368); and in Schenectady County on or about July 28, 2020 (SR at 369-374).  However, petitioner did not identify these collateral attacks in his Petition.  Further, respondent explains that "[i]t is unclear if petitioner has abandoned these motions," Dkt. No. 15 at 6; however, the Court's independent research has uncovered no subsequent state court decisions related to any of the filings.  Accordingly, the Court will not consider them for purposes of this Decision and Order.

December 6, 2019, the Third Department denied the application.  SR at 431.  Respondent states that he was "not in possession of proof of service of notice of entry of this order upon petitioner."  Dkt. No. 15 at 5.  Respondent also indicates that petitioner did not seek leave to appeal the denial before the Court of Appeals.  *Id.*; *see also* Dkt. No. 15-1 at 16-17.

## III.    THE PETITION

Petitioner challenges a 2009 judgment of conviction in Schenectady County, upon a guilty plea, of two counts of second degree arson.  Pet. at 1-5; Dkt. No. 1-2 at 1; *accord Altheiser*, 70 A.D.3d at 1067.

Liberally construing both the petition and memorandum of law together, petitioner argues that he is entitled to federal habeas relief because (1) his Fourth Amendment Rights were violated when Foster illegally conducted a search of his back porch, Pet. at 2-3; (2) there is missing evidence to prove his guilt, namely forensically testing the liquid in the beer can to prove it is the same combustible liquid used to ignite the fires and conduct a thorough interview of all eyewitnesses, some of whom did not identify petitioner as the perpetrator, *id.* at 7-8; (3) the plea was invalid and represents "an innocent mentally challenged person who was unduly convicted of a crime he did not commit," *id.* at 4; and (4) ineffective assistance of appellate counsel for failing to argue about the unconstitutional search and seizure that led to petitioner's arrest and, instead, filed an *Anders* brief indicating that there were no nonfrivolous issues to be raised on appeal, Dkt. No. 1-1 at 2-5.

## IV.     DISCUSSION[8]

### A.     Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions.  28 U.S.C. § 2244(d)(1).  The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review.  28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).[9]  Properly filed state court applications for relief operate to toll the limitations period if those applications are filed before the one-year limitations period expires.  28 U.S.C. § 2244(d)(2); *Saunders*, 587 F.3d at 548.

The Court noted that petition did "not dispute that his petition [wa]s untimely," and instead "argue[d] that the equitable exception of actual innocence should apply to forgive his late filing."  Dkt. No. 5, Decision and Order, at 5 (citing Pet. at 12-23).  Respondent does not contest the timeliness of the petition, indicating that "petitioner's time to seek leave to appeal

---

[8]  Respondent argued that the petition should be dismissed based on petitioner's failure to update the Court with his new address after his release to parole in contravention of the Local Rules.  Dkt. No. 15-1 at 17-18, 29-30. Rule 10.1(c)(2) of the Court's Local Rules of Practice states, in relevant part, that "[a]ll attorneys of record and *pro se* litigants must immediately notify the Court of any change of address."  N.D.N.Y. L.R. 10.1(c)(2) (emphasis omitted).  "Failure to notify the Court of a change of address in accordance with L.R. 10.1(b) may result in the dismissal of any pending action."  N.Y.N.Y.L.R. 41.2(b). However, in August of 2022, petitioner filed a notice of change of address updating his location with the Court.  Dkt. No. 17.  Accordingly, respondent's argument has been rendered moot by petitioner's subsequent filing.

[9]  Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1)(B)-(D).  None of the bases for a later date upon which the statute of limitations could have begun to run appear to apply in this case.

either [the order affirming his criminal conviction or denying his petition for error coram nobis]

. . . never commenced."  Dkt. No. 15-1 at 20; *see also* N.Y. Crim. Pro. Law ("C.P.L.") §

460.10(5)(a) (requiring "[w]ithin thirty days after service . . . of a copy of the order sought to

be appealed," an application for leave to appeal to be made to the Court of Appeals).

Accordingly, given respondent's concession that the limitations period has not yet

commenced, the Court will not consider any of the parties' other arguments related to

timeliness.

### B.    Exhaustion

An application for a writ of habeas corpus may not be granted until a petitioner has

exhausted all remedies available in state court unless "there is an absence of available State

corrective process" or "circumstances exist that render such process ineffective to protect the

rights of the applicant."  28 U.S.C. § 2254(b)(1)(A), (B)(i), (ii).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and

substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court

prior to raising them in a federal habeas corpus petition.  *O'Sullivan v. Boerckel*, 526 U.S.

838, 845 (1999).  Substantive exhaustion requires that a petitioner "fairly present" each claim

for habeas relief in "each appropriate state court (including a state supreme court with

powers of discretionary review), thereby alerting that court to the federal nature of the claim."

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted).  In other words, petitioner "must

give the state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at

845.[10]

### 1.    Direct Appeal & 440 Motion

As is relevant to the instant action, petitioner's pro se submission directly challenging his criminal conviction argued that he was entitled to relief because (1) Foster and DeMarco illegally searched petitioner's back porch and seized the beer can which should have been suppressed; (2) the judge presiding over the *Huntley/Mapp* hearing was biased; (3) the plea was unlawful; and (4) the court erred in allowing the People to retrieve a buccal swab for DNA evidence comparison so late in the proceedings.  SR at 226-227.  However, petitioner never sought leave to appeal these claims from the Third Department's decision affirming his conviction.

Accordingly,

> having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure appellate review of the denial of that claim. *See* 28 U.S.C. § 2254(c) (providing that "(a)n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented"). Thus, where the petitioner has appealed his conviction to the highest state court, and throughout the course thereof has fairly presented the claim

───────────────

[10] Liberally construing the petition, the Court identified claims alleging constitutional violations for "missing evidence" since there was no forensic testing of the liquid in the beer can to prove that it was the same combustible liquid used to ignite the fires and that a more thorough interview of all the eyewitnesses would find individuals who did not identify petitioner as the perpetrator. Pet. at 7-8. However, to the extent these represent claims at all, they were never raised in any of petitioner's state court motions; therefore, the state courts never had any opportunity – let alone one full opportunity – to resolve any of these alleged constitutional violations. *O'Sullivan*, 526 U.S. at 845. Consequently, the claims are denied and dismissed as completely unexhausted.

Further, to the extent that these facts and circumstances were proffered as proof that petitioner was actually innocent so that his petition would not be considered time-barred, those arguments are moot.  For the reasons previously discussed, respondent has not argued that the petition is untimely.

Moreover, petitioner was clear that his intention was not to assert an additional, free-standing claim of actual innocence. Pet. at 7-8. Therefore, there is no need to explore these assertions in the context of a greater actual innocence claim.

> that is now the gravamen of his federal habeas corpus petition, he
> has satisfied the exhaustion requirement.  *Wilson v. Harris*, 595
> F.2d 101, 102 (2d Cir. 1979). However, where the petitioner did not
> utilize all the appellate procedures of the convicting state to present
> his claim, he has failed to exhaust his state remedies[.]

*Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981); *see also Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) ("In New York, to invoke one complete round of the State's established appellate review process, a [petitioner] must first appeal his . . . conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal.") (internal quotation marks and citations omitted).  Additionally, each individual only has one opportunity to apply to the Court of Appeals for a direct review.  *See e.g. Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006).

Here, petitioner failed to utilize all of the available mechanisms to secure appellate review of his direct appeal because the Court of Appeals was never given the opportunity to evaluate his claims.  However, "petitioner [might] utilize available state remedies for [a] collateral attack of his conviction in order to satisfy the exhaustion requirement."  *Klein*, 667 F.2d at 282.  "For example, in New York a defendant may challenge the conviction based on matters not in the record that could not have been raised on direct appeal . . . but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not."  *Rodriguez v. Smith*, No. 7:10-CV-8306, at *5 (S.D.N.Y. Oct. 28, 2015) (citing N.Y. C.P.L. §§ 440.10 & 440.10(2)(c)).

Petitioner's first and third claims for relief were repeated in his 440 motion.  SR at 239.  However, the Schenectady County Supreme Court denied the motion pursuant to C.P.L. § 440.10(2)(a), holding that the issues "appeared in the record and could have been raised on [petitioner's] direct appeal," and that "the Appellate Division reviewed the record [and briefs] .

14

. . and [held] . . . that there were no nonfrivolous issues to be raised."  SR at 251-53.  Petitioner unsuccessfully sought leave to appeal.  SR at 258-260, 316.  Petitioner again sought leave to appeal from the Court of Appeals and the application was dismissed "because the order sought to be appealed from is not appealable under [the] C[riminal Procedure Law.]"  SR at 330.

 While petitioner utilized all levels of appellate review for his 440 motion, "the relief petitioner sought . . . was simply the wrong remedy given the nature of his claim . . . the same considerations of policy and practicality . . .  are as much implicated when a petitioner chooses the wrong procedure to press his claims as when he fails to make any effort to obtain relief." *United States v. Smith*, 632 F. Supp. 602, 605 (E.D.N.Y. 1986).  In sum, the Schenectady County Court utilized a statutory provision which "prevent[s 440 motions] . . . from being employed as a substitute for a direct appeal when the [petitioner] was in a position to raise an issue on appeal or could have readily raised it on appeal but failed to do so." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (quotation marks and citations omitted).

 Petitioner again repeats his claims of a Fourth Amendment violation and unlawful plea in the instant petition.  Despite petitioner's apparent attempts to exhaust his claims in his 440 motion, he was unsuccessful.  Specifically, these two records-based claims were not properly presented to the state courts because petitioner failed to engage in the entire appellate process for his direct appeal and could not rectify that failure through a state court collateral challenge.  *See Romero v. Rock*, No. 1:08-CV-7791, 2010 WL 908844, at *8 (S.D.N.Y. Feb. 2, 2010) (holding claims unexhausted where petitioner "forfeited review by the Court of Appeals . . . by failing to comply with state procedural rules governing when to raise them,"

since petitioner "did not exhaust his evidentiary claims as part of his direct appeal" and instead presented them in a 440 motion which was denied "because the[ claims] were record-based claims that could have been (but were not) raised [in an] . . . application seeking leave to appeal to the Court of Appeals.").  Further, there is no indication that the Section 2254(b)(1)(B) exceptions apply, as petitioner has failed to address any of them. Therefore, the claims are unexhausted.

**2.      Writ of Error Coram Nobis**

In his application for a writ of error coram nobis, petitioner argued, as he does in the instant petition, that his appellate counsel was ineffective for failing to litigate his suppression issue, and that his waiver of his right to appeal was invalid.  SR 379-96.  The Third Department denied the application, and petitioner never sought leave to appeal the denial from the Court of Appeals.  SR at 431; Dkt. No. 15 at 5; Dkt. No. 15-1 at 16-17.

After statutory amendments in 2002 began allowing "discretionary appeals from orders of the Appellate Division deny[ing] coram nobis relief based on requests for ineffective assistance of appellate counsel," proper exhaustion required a petitioner to seek "leave to appeal from the New York Court of Appeals." *Jones v. Artus*, 615 F. Supp. 2d 77, 80 (W.D.N.Y. 2009).  Accordingly, such claims were deemed unexhausted if they were denied by the Appellate Division and not subsequently presented to the Court of Appeals.  *See Shomo v. Maher*, No.1:04-CV-4149, 2005 WL 743156, at *3 (S.D.N.Y. Mar. 31, 2005) (explaining the evolution of the C.P.L.'s appeal process, concluding that, after 2002, the ability to appeal a writ of coram nobis's denial to the New York Court of Appeals provided individuals with a newly available remedy that was a prerequisite to state court exhaustion).

16

Here, petitioner failed to appeal the Appellate Division's denial to the Court of Appeals. Accordingly, petitioner's claim that his appellate counsel was constitutionally ineffective is unexhausted.  Further, there is no indication that the Section 2254(b)(1)(B) exceptions apply, as petitioner has failed to address any of them.[11]

## C.    Merits

Generally speaking, "there is no basis to retain jurisdiction over a petition that contains only unexhausted claims."  *Grefer v. Frank*, No. 9:17-CV-1299 (MAD/TWD), 2021 WL 1199880, at *6 (N.D.N.Y. Mar. 3, 2021).  Courts in this Circuit have routinely "exercise[d] one of two options: (a) dismiss for failure to exhaust, or (b) deny on the merits pursuant to § 2254(b)(2)."  *Polanco v. Ercole*, No. 1:06-CV-1721, 2007 WL 2192054, at *8 (S.D.N.Y. July 31, 2007) (citing cases).  In this instance, the Court chooses the latter.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be

---

[11] A court can subsequently "deem" unexhausted claims to be exhausted where it is shown that a petitioner is unable to return to state court.  *See e.g. Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citing cases). However, for the reasons discussed in Section III(A), petitioner's failure to receive a notice of entry of the Appellate Division's decision affirming his conviction or denying his writ of error coram nobis means he should be able to return to state court continue to exhaust his state court remedies.

17

given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam)

(quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

      The Supreme Court has repeatedly explained that "a federal habeas court may

overturn a state court's application of federal law only if it is so erroneous that 'there is no

possibility fairminded jurists could disagree that the state court's decision conflicts with th[e

Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per

curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).  The AEDPA foreclosed

"'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions

of state courts.'" *Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2149 (2012) (per curiam)

(quoting *Renico,* 559 U.S. at 779).  A state court's findings are not unreasonable under

§2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance

would have reached a different conclusion.  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The

question under AEDPA is not whether a federal court believes the state court's determination

was incorrect but whether that determination was unreasonable - a substantially higher

threshold." *Schriro*, 550 U.S. at 473.

      Here, the Third Department considered the record, counsel's brief, and petitioner's pro

se filing arguing that his Fourth Amendment rights were violated and his plea was invalid,

and it ultimately concluded that there were no nonfrivolous issues for appeal.  SR at 232.

Such a determination is on the merits, and is entitled to AEDPA deference.  *See e.g.*

*Jimenez*, 458 F.3d at 146 (explaining the development of determining whether AEDPA

deference applies to a state court decision).  Further, the Third Department summarily

denied petitioner's writ of error coram nobis arguing that counsel was ineffective for filing an

*Anders* brief instead of arguing substantive constitutional violations, also constituting a

decision on the merits.  *See Valentin v. Johnson*, 9:20-CV-1384 (GTS), 2022 WL 2304172, at *14 (N.D.N.Y. June 27, 2022).  For the following reasons, the Court concludes that the state courts reasonably applied federal law in determining petitioner's claims were meritless, thus, petitioner is not entitled to habeas relief.

### 1.      Fourth Amendment Search & Seizure Claim

Petitioner's Fourth Amendment claim is foreclosed by *Stone v. Powell*, 428 U.S. 465 (1976).  Pursuant to *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief[.]"  428 U.S. at 482; *accord Graham v. Costello*, 299 F.3d 129, 133-134 (2d Cir. 2002).  This bar "applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause[.]"  *McCray v. Capra*, No. 9:15-CV-1129 (JKS), 2017 WL 3836054, at *6 (N.D.N.Y. Aug. 31, 2017) (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam)).

The only requirement under *Stone* is that the state provide a petitioner the "opportunity" to litigate a Fourth Amendment claim.  *McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).  Therefore, habeas review is only available: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *accord Hirsh v. McArdle*, 74 F. Supp. 3d 525, 532-533 (N.D.N.Y. 2015).

The Second Circuit has recognized that New York provides adequate procedures to

19

redress Fourth Amendment violations. *Capellan*, 975 F.2d at 70 & n.1 (citing a motion to

suppress evidence, pursuant to CPL § 710.10 *et seq*., as a "facially adequate" and

"approved" procedure for adjudicating alleged Fourth Amendment violations); *see also, e.g,*

*Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013)

(citing CPL § 710.10 and finding that the Second Circuit has explicitly approved New York's

procedure for litigating Fourth Amendment claims).

> [O]nce it is established that a petitioner has had an opportunity to
> litigate his or her Fourth Amendment claim (whether or not he or
> she took advantage of the state's procedure), the court's denial of
> the claim is a conclusive determination that the claim will never
> present a valid basis for federal habeas relief.

*Graham*, 299 F.3d at 134.

Here, petitioner moved to suppress the beer can and related evidence from his

criminal case arguing that it was discovered only after law enforcement unlawfully trespassed

on his properly. SR at 1-137. The County Court conducted a hearing whereby it heard

openings, testimony, cross-examination, and summations. The County Court issued a ruling

which was then appealed and affirmed. None of these actions demonstrate a lack of

corrective procedure or that petitioner was somehow precluded from participating in it.

Conversely, petitioner was presented with an opportunity to litigate his Fourth Amendment

claims, in which he actively engaged. The fact that petitioner was unsuccessful is irrelevant.

Thus, petitioner's Fourth Amendment claims are barred.

Moreover, petitioner's guilty plea would still preclude Fourth Amendment relief. As

discussed in further detail *infra*, in Section III(C)(2), petitioner's conviction was rendered

pursuant to a constitutionally valid guilty plea.

[A] guilty plea represents a break in the chain of events which has

20

> preceded it in the criminal process. When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the
> offense with which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of constitutional
> rights that occurred prior to the entry of the guilty plea. He may only
> attack the voluntary and intelligent character of the guilty plea by
> showing that the advice he received from counsel was not within
> the [constitutionally required] standards[.]

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."); *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (explaining that where a petitioner provides a counseled guilty plea, "the issue is not the merits of [petitioner's] independent claims . . . but rather whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel.") (internal quotation marks and citations omitted).

"Since Fourth Amendment rights are nonjurisdictional, a knowing and voluntary guilty plea waives claims stemming from an alleged Fourth Amendment violation." *Taylor v. Unger*, No. 1:11-CV-1078, 2012 WL 5288733, at *4 (W.D.N.Y. Oct. 23, 2012) (citing *inter alia United States v. Arango*, 966 F.2d 64, 66 (2d Cir. 1992)).  Accordingly, even if petitioner had proffered a cognizable claim, his knowing, voluntary and intelligent guilty plea served to waive it.

### 2.    Invalid Plea

In order to comply with constitutional due process protections, a guilty plea must be knowing, voluntary and intelligent.  *See United States v. Ruiz*, 536 U.S. 622, 628-29 (2002) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Brady v. United States*, 397 U.S. 742, 748 (1970)).  "The longstanding test for determining the validity of a guilty plea is whether the

plea represents a voluntary and intelligent choice among the alternative courses of action open to the [petitioner]."  *Ferrer v. Superintendent*, 628 F. Supp. 2d 294, 304 (N.D.N.Y. 2008) (quoting *Hill*, 474 U.S. at 56) (quotation marks omitted).

> Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that he or she 1) was competent to proceed and was fully aware of the nature of the charges faced; 2) had a rational and factual understanding of the proceedings; and, 3) was cognizant of the constitutional protections relinquished upon entry of the plea.

*Capra v. LeClair*, No. 9:06-CV-1230 (GTS/DEP), 2010 WL 3323676, at *9 (N.D.N.Y. Apr. 12, 2010) (citing *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004)).

In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [petitioner's] allocution statements."  *Carpenter v. Unger*, 9:10-CV-1240 (GTS/TWD); 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

> [T]he representations of the [petitioner], his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where . . . [petitioner] . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's] sworn statements and hold him to them.").

22

Here, petitioner's own words belie any subsequent arguments that his plea was unknowing or involuntary.  At the outset, despite petitioner's present assertions of incompetence, petitioner indicated that he was thinking clearly, with the assistance of medication that he had not been taking at the time of the crime (and instead was unsuccessfully self-medicating with alcohol).  Petitioner was repeatedly informed about, and acknowledged, the constitutional rights that he was forfeiting accepting a guilty plea.  These included his right to trial, right to put on a defense (namely one of intoxication), right to cross-examine witnesses, and right to appeal.  Petitioner confirmed that he understood the details of the agreed-upon sentence, and that he was entering into the deal voluntarily without threat or coercion from any party.  Petitioner also shared his previous experiences with the law, confirming that this was not his first time navigating through the criminal justice system. Petitioner also testified about the night that the crimes took place, specifically recalling being drunk and angry before setting the fires, gesturing to the court how he threw the accelerant, acknowledging that people could have been in the homes he lit on fire and could have been hurt, and ultimately conceding that he remembered committing the crimes, a conclusion which the evidence supported.

Petitioner's self-serving and conclusory assertions to this Court mirror those which he previously made to probation and later recanted in court.  Petitioner's testimony during his guilty plea and sentencing provided the Third Department with statements it could rely upon to confidently conclude that petitioner was competent to enter a plea and that plea was knowing, intelligent, and voluntary.  In sum, petitioner offered nothing substantial enough to overturn the presumption that the representations in his plea allocution and sentencing hearings are valid, and the decision to deny petitioner's argument is neither contrary to nor

23

an unreasonable application of clearly established precedent.  Accordingly, petitioner's unlawful plea claim is denied.

### 3.    Ineffective Assistance of Appellate Counsel[12]

"The Sixth Amendment has been interpreted to require that indigents be provided with assigned counsel for their first appeal as of right . . . [; t]hus an individual is entitled to the effective assistance of appellate counsel." *Valentin*, 2022 WL 2304172, at \*14 (citing cases); *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing Second Circuit cases deciding ineffective assistance of appellate counsel).  Courts apply the clearly established standard from *Strickland v. Washington*, 466 U.S. 668 (1984), to determine whether "counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (internal quotation marks and citations omitted).

> In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. . . However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.

---

[12] Petitioner claims that his appellate counsel "was disbarred because he had State prison inmates drafting out his appellate briefs [thus, i]t [wa]s obvious he was incapable of preparing a brief that contained a Fourth Amendment violation." Pet. at 11. However, this misstates some important facts. Petitioner's appellate counsel was suspended from the practice of law, several years prior to representing petitioner, for paying "a State inmate . . . to help prepare appellate briefs in criminal cases in which [the attorney] was assigned counsel or retained." *In re LaJoy*, 279 A.D.2d 695, 695 (3rd Dep't 2001).  The attorney was suspended from practice for a year, he was never disbarred.  *Id.*; *see also In re LaJoy*, 293 A.D.2d 866 (3rd Dep't 2002) (granting reinstatement to practice as an attorney).  This disciplinary matter far preceded the events in question and seems irrelevant to the instant action. Petitioner's conclusory and unsupported assertions fail to persuade the Court otherwise.

*Mayo*, 13 F.3d at 533 (internal citations omitted).

Petitioner claims that his appellate counsel's actions in filing an *Anders* brief, instead of making allegedly meritorious arguments about the aforementioned constitutional violations, renders his representation constitutionally deficient.

> Appellate counsel is not required to file a brief at all, if there are no non-frivolous issues to be raised.  If, after a "conscientious examination" of the case, counsel concludes that the appeal is "wholly frivolous," counsel may request permission from the court to withdraw, while noting anything in the record that might arguably support the appeal.  *Anders v. California*, 386 U.S. 738, 744 . . . (1967).  If the court agrees, it will grant the request, but if the court finds "any of the legal points arguable on their merits," it must afford an indigent defendant the assistance of counsel to argue the appeal.  *Id.*

*Torres v. McGrath*, 407 F. Supp. 2d 551, 560 (S.D.N.Y. 2006).  However, "[t]he filing of an *Anders* brief does not in itself constitute ineffective assistance of counsel."  *Jorge v. United States*, 818 F. Supp. 55, 57 (S.D.N.Y. 1993) (citing *McCoy v. Court of Appeals of Wisconsin District 1*, 486 U.S. 429, 442-44 (1988)).  In fact, "[t]he submission of an *Anders* brief does not meet the *Strickland* standard for ineffective assistance if the request to withdraw is granted by the court."  *Carrasquillo v. Heath*, No. 1:10-CV-5639, 2017 WL 4326491, at *6 (E.D.N.Y. Sept. 28, 2017).

Here, during the course of the direct appeal, petitioner's appellate counsel filed an *Anders* brief and was successful in seeking permission to withdraw from the case. Specifically, petitioner's appellate counsel noted that the record reflected (1) a voluntary, knowing, and intelligent guilty plea and waiver of appeal; (2) petitioner was sentenced as promised and in accordance with state law; and (3) constitutionally effective assistance of trial counsel.  There is no indication that, had petitioner's appellate counsel made the

arguments petitioner claims he should have on direct appeal, a different result would have materialized.  In fact, this Court can confidently conclude that any such arguments would not have produced a different outcome given the Third Department's evaluation of the record in connection with petitioner's pro se submission – which advanced his claims of an invalid plea and Fourth Amendment violation – and ultimate decision that there were no nonfrivolous issues to appeal.

In sum, as previously noted, the state court's conclusion that petitioner's plea was valid was not an unreasonable application of federal law.  Consequently, that conclusion precluded any of the Fourth Amendment challenges petitioner asserts his appellate counsel should have advanced.  Accordingly, petitioner's appellate counsel's "failure to make [these] meritless argument[s] does not amount to ineffective assistance[.]" *Torres*, 407 F. Supp. 2d at 562 (internal quotation marks and citations omitted).  Therefore, under the deferential ADEPA review standard, the Appellate Division's denial of petitioner's coram nobis application was also neither contrary to, nor an unreasonable application of, federal law.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. §

2253(c)(2) requires;[13] and it is further

ORDERED that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated: March 1, 2023

Brenda K. Sannes
Chief U.S. District Judge

---

[13] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).